Frank Jimmy SNIDER, Jr., Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 8267.

United States Court of Appeals Fourth Circuit.

Argued March 29, 1961.

Decided June 23, 1961.

684

Harvey S. Lutins and T. Warren Messick, Roanoke (Morton Honeyman and Stuart A. Barbour, Jr., Roanoke, Va., on the brief), for appellant.

Clarence F. Hicks, Sp. Asst. Atty. Gen. of Virginia, (A. S. Harrison, Jr., Atty. Gen. of Virginia, on the brief) for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

A state court prisoner, under sentence of death for the rape of a 9-year old child, filed a petition for a writ of habeas corpus in the District Court. Since the sentence was about to be executed, the writ was issued and, thereafter, a hearing was held, after which the District Judge concluded that there had been no showing of any denial of any of the prisoner's constitutional rights.[1]

On appeal, we remanded the case to the District Court for further proceedings. The prisoner's principal claim was that he was insane at the time the crime was committed, a defense which had not

been raised at the trial. This fact, the prisoner claims, demonstrated the incompetency of his counsel. This Court suggested in its opinion [2] that evidence of the prisoner's actual mental condition would be of assistance in the resolution of the question tendered.

Thereafter, a further hearing was held in the District Court in which evidence of the prisoner's mental condition was taken. The District Court again discharged the writ and ordered the dismissal of the petition.[3]

At the second hearing in the District Court, the Superintendent and Clinical Director of the Southwestern State Hospital, an institution for the care and treatment of mental patients supported by Virginia, testified that the prisoner was not psychotic or neurotic, but that he had a sociopathic personality disorder with an antisocial reaction. A physician selected by the prisoner, or his counsel, testified that the prisoner had a mental disease, and that his sex urge was so strong as to become compulsive and irresistible in the presence of a female under his control in a secluded place. The doctors seemed in agreement that his mental condition now was substantially what it was at the time the offense was committed and at the time of the prisoner's trial.

There is nothing in the evidence relating to the prisoner's mental condition that suggests that he was not competent to stand trial. The record as a whole discloses that he was entirely capable of assisting his counsel in his defense, and that he did so. Though we may assume that the evidence introduced at the second hearing in the District Court would have been sufficient had it been offered at the time of his trial in the state court, to require the submission of the question of insanity to the jury,[4] it does not disclose such an extreme condition as to require the con-

1. Snider v. Smyth, D.C.E.D.Va., 187 F. Supp. 299.

2. Snider v. Smyth, 4 Cir. 263 F.2d 372.

3. Snider v. Smyth, D.C.E.D.Va., 187 F. Supp. 299.

4. Lucas v. Commonwealth, 201 Va. 599, 112 S.E.2d 915.

clusion that counsel was so grossly neglectful of the prisoner's interest in failing to rely upon his mental condition as a defense as to convert the proceedings into a farce or a mockery of justice.[5] Clearly the prisoner is sexually abnormal. His history preceding the crime is a lurid one filled with sexual activity with a succession of women and children, much of it with the consent of his companion of the moment, but much of it accompanied by violence, depravity, or both. Perhaps, it was this history suggesting extreme sexual abnormality, which led the state court prior to trial to have the prisoner examined by a commission of two physicians under the provisions of Section 19–202 of the Code of Laws of Virginia of 1950 (Section 19.1–228 of the 1960 revision). The commission reported orally to the Commonwealth's attorney and to the attorney for the prisoner that, after examining the defendant, they were of the opinion that he was not of unsound mind. These two doctors were subpoenaed as witnesses by the Commonwealth and were present in the courtroom at the time of the trial.

While the prisoner now relies upon his history of sexual excess and depravity, including the crime of which he was convicted, to show his mental derangement, at the time of trial he insisted that he had not committed the crime. He sought to establish an alibi. At the time of the trial, therefore, his counsel based the defense upon the contention that he was not present and did not commit the crime. Since the physicians who had examined him were prepared to testify that he was not of unsound mind, they could hardly have developed a defense of insanity without admitting this and other sexual crimes, which, collectively, may well suggest a deranged mind, or very poor control of his conduct. A prisoner who insists that he did not commit a crime can hardly be forced by his counsel to confess it in order to support a tenuous defense of insanity.[6]

At the time of his trial the prisoner was represented by an attorney appointed by the court, assisted by another attorney from Gadsden, Alabama employed by the defendant's parents. The depositions of these attorneys were taken in connection with the hearings in the District Court. The privately employed counsel thought the attorney appointed by the court, who took the lead in the defense, was a good lawyer, and he found no fault with what the court appointed counsel did in the preparation or trial of the case. The privately employed attorney arrived in Roanoke only on the evening preceding the day before the 3-day trial commenced. There was no motion for a continuance, or anything to suggest that the defendant and his attorneys were not prepared for trial. Indeed, the court appointed attorney said that he had completed his preparation before the trial commenced, and there is every indication that the prisoner was fairly tried and adequately represented by his two attorneys. If someone now may think that the defense would have stood a better chance if the unwilling defendant had confessed the crime and

---

5. Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83; But see Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61.

6. The medical evidence in the District Court suggests little or no control of his sex urges in the presence of a female under his control in a secluded place. The doctors all agree he could and did control such urges in the presence of others.

The testimony at the trial was that he forced a little girl into his automobile after blocking her passage through an alley in Roanoke. He then drove to a secluded spot where the attack occurred. En route he had compelled her to commit certain acts for the purpose of exciting his genitals. The circumstances suggest that the crime was planned at a time when his controls were not at their lowest. These facts make the defense that he acted on an irresistible impulse less appropriate than it might have been had he first encountered the child under other circumstances.

pleaded insanity, it shows no such neglect of their client's interest or lack of skill on the part of the attorneys as to make the proceedings so unfair that they may be said to have been wanting in due process.[7]

■ The prisoner also complains that the pretrial report of the physicians who constituted the commission to examine the defendant, was submitted orally, rather than in writing. He reads Virginia's statute as requiring a written report.[8] If the Virginia statute did require a written report, however, the receipt of the verbal report was a procedural defect out of which no possible question of due process could arise.[9]

These and other contentions of the prisoner are more fully considered in the two opinions of the District Court, where the facts are fully set forth. For the reasons stated by the District Judge in those opinions and because of what we have here said, we think the District Court properly discharged the writ.

Because the prisoner is under a sentence of death, this Court, as the District Court, has sought to give the prisoner opportunity to develop every possible contention, however baseless it may seem. The result has not disclosed a basis upon which a federal court may issue a writ, but the proceedings in the District Court have developed medical testimony which is much more complete and revealing than the oral report which the state trial court received. Out of this additional evidence there may arise a moral question as to whether Virginia should take the life of a man having the deficiencies this prisoner is said to have. Any such question may properly be addressed to Virginia's Chief Executive.

■■ Moreover, should it be claimed that, aside from his mental condition at any earlier time, the prisoner is now so deficient in his faculties that it would amount to a denial of due process to execute him,[10] Virginia's statutes give him an opportunity to raise the question.[11] The possibility that such questions, cognizable in proceedings in Virginia, may be present has no bearing upon our consideration of the adequacy of prior state court proceedings under constitutional standards, with which, alone, we are concerned.

Affirmed.

---

7. Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83; Avery v. State of Alabama, 308 U.S. 444, 60 S. Ct. 321, 84 L.Ed. 377.

8. It is very doubtful that the Virginia statute does require a written report unless the examination is followed by a commitment.

9. Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270; Rogers v. Peck, 199 U.S. 425, 26 S.Ct. 87, 50 L. Ed. 256.

10. See Solesbee v. Balkcom, Warden, 339 U.S. 9, 14, 70 S.Ct. 457, 94 L.Ed. 604 (dissenting opinion of Mr. Justice Frankfurter); Caritativo v. People of State of California, 357 U.S. 549, 550, 552, 78 S. Ct. 1263, 2 L.Ed.2d 1531; Phyle v. Duffy, 334 U.S. 431, 68 S.Ct. 1131, 92 L.Ed. 1494; Nobles v. State of Georgia, 168 U.S. 398, 405, et seq., 18 S.Ct. 87, 42 L. Ed. 515.

11. Code of Virginia, 1950, as revised, 1960 § 19.1-235.