**Wilbert Eugene PROFFITT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 77–1997.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1978.

Decided Sept. 11, 1978.

Rehearing and Rehearing En Banc Denied Nov. 17, 1978.

Richard A. Williamson, Williamsburg, Va., Marshall-Wythe School of Law, for appellant.

855

J. Frederick Sinclair, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER, Circuit Judge, DONALD P. LAY, United States Circuit Judge for the Eighth Circuit (sitting by designation) and WIDENER, Circuit Judge.

BUTZNER, Circuit Judge:

In an earlier decision concerning Wilbert Eugene Proffitt's appeal from the district court's denial of his motion for relief under 28 U.S.C. § 2255, we remanded for an evidentiary hearing to determine whether Proffitt had been advised of his right to seek Supreme Court review of his convictions by petitioning for certiorari. *Proffitt v. United States*, 549 F.2d 910 (4th Cir. 1976). We also authorized exploration of Proffitt's allegation that his court-appointed attorney "failed to adequately present an effective appeal" because Proffitt could not pay him $10,000. 549 F.2d at 912, n.1. At the evidentiary hearing, where Proffitt was represented by counsel, the district court resolved the certiorari problem and received evidence concerning the fee and expenses the attorney requested. The district court concluded that the fee discussions did not render the attorney's assistance ineffective. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I

For the purpose of this appeal it is sufficient to note that in separate trials, Proffitt was convicted of charges related to the robberies of two banks.[1] The same court-appointed attorney represented him at both trials and on the direct appeal of his convictions. Another attorney was appointed to represent him on his § 2255 motion.

At the evidentiary hearing, Proffitt's former attorney testified that shortly after the

---

1. The facts concerning these convictions are summarized in *Proffitt v. United States*, 549 F.2d 910, 911 (4th Cir. 1976).

first trial he visited Proffitt in jail. At this meeting, Proffitt asked if there was "anything else that could be done" to help his defense at the second trial if he could retain the lawyer. The lawyer testified that "what I told Proffitt was . . . that I saw the possibility in the second trial of putting on a psychiatric defense . . . . I [explained] . . . the possibility that we could hire a psychiatrist to examine him to see what they would come up with . . . ."

The lawyer testified that this idea about asserting a psychiatric defense initially occurred to him after Proffitt's first trial. Proffitt's behavior at that trial, coupled with the lawyer's knowledge that the trial judge had received threats, led him to believe that "Proffitt was probably a psychopath, that he was a sociopath." The lawyer knew of "psychiatrists who believe that sociopaths and psychopaths who do not have psychosis are not responsible for their actions, that their antisocial actions are related to their mental condition." He had successfully presented an insanity defense in a similar case in the District of Columbia and "thought it was worth exploring" in Proffitt's case.

The attorney testified that he told Proffitt that this psychiatric defense could be effectively presented only if his appointment by the court was vacated and he was privately retained. He explained to Proffitt that *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968), held that when defense counsel discloses that he intends to present psychiatric testimony on the issue of the defendant's sanity, the district court can order the defendant to submit to a psychiatric examination. The attorney reasoned that if he sought public funds for a psychiatric examination for Proffitt, the government would be alerted to the insanity defense and would request its own examination. On the other hand, if private funds were available to hire psychiatrists, the lawyer thought he could present an insanity defense without giving notice to the government.

The lawyer said he told Proffitt that this defense would cost $5,000 as a fee for him and at least $5,000 for psychiatrists. He denied that he ever told Proffitt that he could "get him off" if he were retained. He said that Proffitt gave him the phone number of a relative who might be able to provide the money. According to the lawyer, he called this person twice, but after he explained that the defense might fail, the relative did not offer the money. Consequently, the psychiatric defense was never investigated, and the lawyer never brought it to the court's attention.

Proffitt's wife and father also testified, but they had no knowledge of the discussions between Proffitt and his lawyer. Proffitt was not present at the hearing because the district judge deemed that his affidavit sufficiently stated what his testimony would be. However, at the conclusion of the hearing, the district judge expressed concern about the case and permitted Proffitt to file another affidavit dealing with the discussions about the insanity defense. Proffitt's supplemental affidavit confirmed that his lawyer had indicated that money was required to present the defense, but according to his recollection, the question of his sanity came up before the first trial. He also insisted that the lawyer said that he could "get him off" at the second trial if the funds were obtained.

The district court ruled that Proffitt had not proved that his lawyer inadequately represented him on appeal for lack of a fee, that the lawyer never promised that he could obtain an acquittal if he were paid, and that the conversation about the insanity defense and payment of $10,000 for fees and expenses took place between the first and second trials. These rulings are amply supported by the evidence, and we affirm them. Relying largely on *Snider v. Cunningham*, 292 F.2d 683 (4th Cir. 1961), the district court concluded that the attorney's decision not to present an insanity defense did not constitute ineffective representation in Proffitt's second trial. It is this aspect of the case which we now consider.

## II

In *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir. 1977), we adopted the following standard for determining whether the representation afforded an accused satisfied the sixth and fourteenth amendments: "Was the defense counsel's representation within the range of competence demanded of attorneys in criminal cases?" Noting that this standard requires an objective assessment of counsel's adequacy, we mentioned a number of sources to which a court could resort for ascertaining the normal competence expected of a trial lawyer. With respect to this case, three sources are pertinent. They are the Criminal Justice Act of 1964, precedent established by courts that have considered similar issues, and the American Bar Association Standards Relating to the Administration of Criminal Justice.

The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, was enacted to "assure adequate representation in the Federal courts of accused persons with insufficient means." S.Rep.No. 346, 88th Cong., 1st Sess. 1 (1963). The Act provides not only for the appointment of counsel but also in § 3006A(e) for the appointment of experts necessary for an adequate defense. Speaking of this assistance, Senator Hruska said as he presented the conference report:

> Possibly the most remarkable and forward-looking provision which S. 1057 contains is that entitled "Services Other Than Counsel." An adequate representation commonly entails more than the mere presence of a lawyer in court. To prepare his defense, he may need investigative, expert, or other services. These are accorded by the terms of the bill, whether the accused has appointed or retained counsel. 110 Cong.Rec. 18521 (1964).

The legislative history also discloses that the Act was designed to implement the sixth amendment guarantee of the assistance of counsel. 110 Cong.Rec. 445, 18521 (1964); 109 Cong.Rec. 14224 (1963). It is clear that Congress intended lawyers appointed pursuant to the Act to seek necessary expert assistance without requiring payment of a fee and expenses. Lawyers of normal competency practicing in federal courts should conform to this basic premise of the Act.

The expert services to which the Act refers include psychiatric assistance. *United States v. Taylor*, 437 F.2d 371, 377 (4th Cir. 1971). The failure of defense counsel to seek such assistance when the need is apparent deprives an accused of adequate representation in violation of his sixth amendment right to counsel. The governing principle is clearly stated in *United States v. Fessel*, 531 F.2d 1275, 1279 (5th Cir. 1976), where Judge Wisdom wrote:

> [W]hen an insanity defense is appropriate and the defendant lacks funds to secure private psychiatric assistance, it is the duty of his attorney to seek such assistance through the use of § 3006A(e). This assistance is required whenever the services are "necessary to the preparation and presentation of an adequate defense."

We emphasized the same point in *Owsley v. Peyton*, 368 F.2d 1002, 1003 (4th Cir. 1966), in a different context involving a state prisoner. There we said:

> The State is quite right that no evidential showing was made to the criminal court of any doubt as to Owsley's mental condition. However, it appears that his attorney must have been aware that proof of the uncertainty was at hand. The lawyer's failure to adduce it in court, we think, rendered his representation of Owsley ineffective to the point of depriving him of his Constitutional right to counsel.

The American Bar Association Standards Relating to the Administration of Criminal Justice recognize that expert services necessary for an adequate defense should be supplied to indigent persons accused of crime. *See*, ABA Standards, Providing Defense Services § 1.5 (App. Draft 1968). The Standards also state that the obligations of a lawyer to an accused whom he has undertaken to represent are the same whether he is privately retained or appointed by the court. ABA Standards, The Defense Function § 3.9 (App. Draft 1971).

■ Applying these objective criteria, we believe that a court-appointed attorney who conditions the investigation or presentation of an insanity defense upon the receipt of a fee for himself and expenses for a psychiatrist has not afforded the accused effective representation. *Snider v. Cunningham,* 292 F.2d 683 (4th Cir. 1961), on which the district court relied, is not to the contrary. In *Snider* the state trial court ordered the accused examined before trial. The doctors reported to the prosecutor and defense counsel that he was not of unsound mind. Consequently, no insanity defense was presented. There was no reason to question this professional judgment except in hindsight on the basis of further psychiatric studies. In contrast, Proffitt's attorney failed to pursue the defense not because he thought it lacked merit, but because Proffitt could not obtain $10,000.

■ The government contends that Proffitt's attorney acted in good faith and that his conduct "shows the conscientious exercise of knowledge and experience to defend his client." This argument is based on the attorney's theory that the element of surprise would be essential to mount a successful insanity defense based on evidence that Proffitt was a sociopath. He reasoned that surprise could be maintained if he and the psychiatrists were privately retained, but that it would be lost if, as court-appointed counsel, he moved for the appointment of a psychiatrist. In support of his theory, the attorney relied on *United States v. Albright,* 388 F.2d 719 (4th Cir. 1968).

Without questioning the attorney's good faith, the district court quite properly rejected his interpretation of *Albright.* During the trial of that case, when Albright's counsel disclosed that he was going to rely on a psychiatrist, the district judge recessed the trial and required Albright to undergo an examination by a psychiatrist selected by the government. On appeal we found no error in the course followed by the district court. Albright's counsel had indicated that he expected to seek reimbursement for the expenses of the psychiatrist

under § 3006A(e), and we observed that this afforded additional support for the prosecutor's request to have a doctor examine the defendant. We expressly noted, however, that our decision did not depend on whether the government paid the accused's expert:

> But our decision is not predicated on defendant's indigency. If a defendant is indigent and avails himself of government aid to support his defense of insanity, that fact merely makes the government's right to have him examined more critical in the maintenance of a "fair state-individual balance," but the government's right to the examination stems from the burden of proof cast upon it and the desirability that the issue be determined on the most reliable evidence available. 388 F.2d at 724 n. 8.

Proffitt and Albright were both tried before the criminal rules were amended to require notice of a defense based on the accused's mental condition.[2] But even before this amendment, as *Albright* demonstrates, the element of surprise played no role in the presentation of an insanity defense regardless of the accused's ability to retain private counsel and psychiatrists. The government's argument therefore finds no support in the law of this circuit.

Finally, the government argues that an insanity defense could not have succeeded. It bases this claim on the lawyer's testimony that he thought Proffitt was a psychopath or a sociopath and on the assertion that *United States v. Chandler,* 393 F.2d 920 (4th Cir. 1968), indicates that such a mental condition is insufficient to prove insanity.

■ The difficulty with the government's argument is two-fold. First, there is no reason to believe that the lawyer possessed the education and experience to definitively diagnose Proffitt's mental condition. The proof does show, however, that he thought the probability of successfully raising the issue of Proffitt's sanity justified the expenditure of a substantial sum of money. Comparatively few defendants ex-

2. Federal Rule of Criminal Procedure 12.2 (eff. Dec. 1, 1975).

hibit symptoms of mental illness, and there is no obligation on conscientious defense counsel to seek the services of an expert in most cases. But when it appears to counsel that the accused is mentally ill and that he cannot afford to consult a psychiatrist, it is counsel's duty to inform the court of this situation and move for a psychiatric examination. *See, United States v. Fessel,* 531 F.2d 1275, 1279 (5th Cir. 1976); *cf., Owsley v. Peyton,* 368 F.2d 1002 (4th Cir. 1966). Such requests are not lightly turned aside. In a colloquy at the evidentiary hearing on Proffitt's § 2255 motion, the district judge explained the court's policy as follows:

> [At] even a . . . suggestion of mental disorder, . . . the Government has to have . . . [the accused] preliminarily examined by one of three or four well-known psychiatrists to determine . . . whether there is enough substance to warrant a full-scale, in custody, if necessary, psychiatric examination. . . .
>
> . . . . .
>
> . . . [I]f either . . . [the accused] . . . or his counsel questions . . . [the] findings of this preliminary study, . . . [a] private and independent . . . [psychiatrist] on the approved list—is hired at Government expense to make a separate examination.

■ The second difficulty with the government's argument is its interpretation of *United States v. Chandler,* 393 F.2d 920 (4th Cir. 1968). *Chandler* abjures attaching penal consequences to such labels as sociopath and psychopath. It recognizes the necessity of thorough psychiatric examination to ascertain the nature of an individual's mental illness, and it was carefully written to preclude the formalistic, mechanical determination of mental responsibility that the government's argument seeks to ascribe to it.

■ We therefore conclude that by conditioning the investigation and presentation of an insanity defense on the payment of a $5,000 lawyer's fee and an additional $5,000 for expenses, Proffitt's court-appointed attorney did not render adequate representation. Such conduct is contrary to the basic purpose of the Criminal Justice Act of 1964, the precedent of sound cases, and the ABA Standards Relating to the Administration of Criminal Justice. None of the reasons advanced by the government justify it.

## III

The next issue is the nature of the relief to which Proffitt is entitled. In some instances where defense counsel has dealt ineffectively with the accused's mental condition, the need for psychiatric examinations or the propriety of an insanity defense is apparent. Then the only appropriate remedy is to grant a new trial. *See, e. g., United States v. Fessel,* 531 F.2d 1275 (5th Cir. 1976); *United States v. Edwards,* 488 F.2d 1154 (5th Cir. 1974); *Owsley v. Peyton,* 368 F.2d 1002 (4th Cir. 1966).

■ In this case, however, it is impossible to determine from the record whether Proffitt's mental condition at the time he committed the offenses would warrant submitting the defense of insanity to a jury. We therefore follow *United States v. Taylor,* 437 F.2d 371 (4th Cir. 1971). In that case, after ruling that the trial court erroneously denied a motion for the appointment of a psychiatrist under § 3006A(e), the court noted that it was possible that a thorough examination would not have assisted defense counsel in preparing an insanity defense. The court remanded the case, directed the district judge to appoint a private psychiatrist to examine the defendant, and gave the following instruction:

> If the report indicates the existence of a substantial question of criminal responsibility, and if defense counsel represents that he intends to rely on it on retrial, the judgment will be vacated and a new trial granted. Otherwise, the judgment of conviction will stand affirmed. 437 F.2d at 379.

Proffitt, like Taylor, "was denied not the opportunity to present a defense, but the opportunity to determine with expert help whether he had a defense worth present-

ing." 437 F.2d at 379 n. 13. We therefore conclude that the relief afforded Proffitt should follow the procedure set forth in *Taylor*.

Although the lawyer's discussion about the need for a fee and expenses to investigate and present an insanity defense occurred after Proffitt's first trial, we believe this circumstance should not preclude the district court from considering whether retrial is warranted on all charges. Proffitt was not sentenced on the charges for which he was first convicted until after the second trial. Thus, the proceedings of the first trial overlapped the period in which his lawyer's inadequate representation was manifested. Moreover, Proffitt's offenses occurred over a span of less than 90 days. Therefore, a thorough psychiatric examination will necessarily cover this period. On the record now before us it is impossible to say that if retrial is granted with respect to some charges, it must be granted as to all. We rule only that this is an issue which the district court should decide on remand after a full record has been developed.[3]

We find no cause for reversal in the issues Proffitt raises in his *pro se* supplemental brief.

The judgment of the district court on Proffitt's § 2255 motion is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

WIDENER, Circuit Judge, concurring and dissenting:

While I otherwise join the decision of the court, I respectfully dissent from the majority's determination that Proffitt's counsel provided ineffective service.

The court holds "that a court-appointed attorney who conditions the investigation or presentation of an insanity defense upon the receipt of a fee for himself and expenses for a psychiatrist has not afforded the accused effective representation." The court further holds that "when it appears to counsel that the accused is mentally ill and that he cannot afford to consult a psychiatrist, it is counsel's duty to inform the court of this situation and move for a psychiatric examination." Although I agree with these statements as abstract matters, their application in this case is not consistent with the facts that should be controlling, especially when considered in the light of the findings of fact adverse to Proffitt by the district court which heard the attorney testify *ore tenus* in open court.

The record indicates that during the visit with Proffitt in jail, the criminal, not the attorney, brought up the question of vacating the court appointment. The lawyer testified that Proffitt asked "[i]f he could be in a position to retain me, is there anything else that could be done with respect to the case."[1] Based on a defense he had conducted in the District of Columbia, the attorney knew of a minority of psychiatrists who thought that sociopaths and psychopaths are not responsible for their anti-social actions. The attorney reasoned that if both he and the psychiatrists were privately employed, the psychiatric reports were favorable, and the testimony were not rebutted by the government because taken by surprise, then a favorable result might be obtained.[2]

In light of this background, I think the characterization of the attorney's conduct as "conditioning" the defense upon the private employment of himself and the psychiatrists is not fair to the attorney. The client raised the issue by asking his attor-

---

**3.** If the district court denies retrial, counsel should promptly notify this court. We will then rule on their joint motion to vacate and reinstate our judgment affirming Proffitt's convictions so he can file petitions for certiorari.

**1.** Proffitt had attempted to retain the attorney at least once before while awaiting trial in the District of Columbia on a firearms possession charge.

**2.** The majority relates, "[t]he lawyer testified that this idea of asserting a psychiatric defense initially occurred to him after Proffitt's first trial." If the statement may imply the attorney had considered the idea prior to the visit with Proffitt in jail, it seems to be in error; the attorney testified the idea came to him when Proffitt raised the possibility of vacating the court appointment, and this occurred during the jail visit.

ney the hypothetical question of what the attorney could do if he were privately retained. The attorney did not initiate discussion of the issue; he merely responded truthfully to his client's inquiry. Instead of evading the question as could have been done, the attorney to his credit answered candidly and fairly. Perhaps he was too competent, but we should not condemn him for it. Nothing in this exchange strikes me as a failure to give the client the competent legal representation that was his constitutional right.[3] There is no objection that a privately-employed attorney may, in some instances, be able to aid his client in ways otherwise unavailable if his services were rendered under court appointment. See *Ross v. Moffitt,* 417 U.S. 600, 612, 616, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

This leads to the issue of whether the attorney could have accomplished the same objectives if court-appointed as he might have if privately retained. And again I must disagree with my brothers. The lawyer's professional judgment that he could utilize the "minority of psychiatrists" to his client's interest, if the court appointment were vacated, is not, I think, so egregious on this record that the court should proceed to render a judgment of ineffectiveness without the benefit of further factual consideration by the district court. Indeed, were I forced to the choice on the facts now before us, I think the record forecloses any conclusion except that the client was well and truly served by his lawyer. For all of Mr. Proffitt's cases and allegations, neither he nor any of his counsel ever raised the issue of the quality of the attorney's representation in the context now presented until after remand. It arose for the first time during the testimony of the attorney at the

hearing below. I think Proffitt's failure, despite his other creative efforts, to raise the issue before is of itself strongly indicative that the services of the attorney were within the range of competence we demand of attorneys in criminal cases. I also note that the district judge who tried the cases said this of the attorney's conduct of the case: "All you have got to do is read the record in this case and soon determine that he did more than man's job in the ordinary presentation of evidence, cross examination, and tactical strategy and so forth."

The majority indicates that the attorney thought his client to be "mentally ill," *ante* at 858, and also states that the need for psychiatric assistance was "apparent," *id.* at 857, but the record and the opinion of the district court do not support these assertions, I think. At one point the attorney testified "I had no question in my mind he [Proffitt] was perfectly competent for trial." The district judge was of a similar opinion,[4] and, in fact, viewed the possible psychiatric defense outlined by the attorney as "almost drumming up a defense, what you say you did here." Statements such as these, especially by the district court, I would have thought, should have averted the conclusion on this record that the need for psychiatric assistance was apparent, and that the attorney thought Proffitt was mentally ill. At the least, the statements would seem to justify a remand for factual determination of whether the attorney believed Proffitt was mentally ill, or whether there was apparent need for psychiatric consultation.

The basis for the psychiatric defense was, as previously related, the attorney's ac-

---

**3.** The only issue that conceivably might arise is that the attorney required a fee for himself as well as the psychiatrists, instead of offering to continue the court appointment and hiring only the psychiatrists. Of course, it is difficult to imagine that a defendant who can afford to retain the services of private psychiatrists might qualify for a court-appointed attorney. As this issue has not been briefed or argued, however, I express no opinion on it.

**4.** At the hearing below, the court commented: "I presided at the trials. I saw all of them. I watched the participation. There wasn't a scintilla of evidence that I ever observed indi-

cating that he didn't know everything. There wasn't anything wrong with his mentality whatsoever." The court stated a similar finding in its opinion:

"There was no claim prior to the trial of the Nokesville bank robbery case or now that Proffitt was insane or mentally incompetent to stand trial—To the contrary, his demeanor and participation in the trial of the Dale City and Nokesville cases and in his numerous post-conviction proceedings confirm his counsel's observation that he was very bright."

quaintance with a minority of psychiatrists who were of opinion that sociopaths and psychopaths are not criminally responsible for their anti-social actions. That the government should not, in his view, be afforded an opportunity to prepare a rebuttal to the testimony of his psychiatrists is hardly surprising. In *United States v. Chandler,* 393 F.2d 920, 926 (4th Cir. 1968), this court en banc adopted the American Law Institute's test for mental competency, including the caveat that "an abnormality manifested only by repeated criminal or otherwise antisocial conduct" would not establish a successful defense. On its face, the evidence the attorney contemplated eliciting from his psychiatrists seems quite similar to evidence this court rejected in *Chandler,* and thus appears to justify the attorney's opinion that the government should not be afforded the opportunity to prepare rebuttal evidence, and that the district court would not order a court appointed psychiatrist on no urging of insanity but that Proffitt was a psychopath or sociopath. The majority's rejoinder is that under *United ed States v. Albright,* supra, we had held that a district court had authority to recess a trial for a mental examination of a defendant at the instance of the government when the defendant disclosed only at the time of trial he relied upon an insanity defense. Such a procedure, of course, would nullify to greater or lesser extent the advantage of surprise. But who can gainsay that the element of surprise would not have been of practical, tactical advantage to the defendant, and who is to say whether or not the government would have moved to recess the trial, or whether or not the district court would have recessed the trial on the government's motion? It is difficult to see how raising these questions would have been to the defendant's disadvantage, and, on a longshot, he may have been able to capitalize on them. What Proffitt, in effect, asked his attorney was what sort of far-fetched defense might be dreamed up if enough money were available, and the attorney simply told him. In this I see no conditioning of representation on payment. Indeed, the record suggests to me that Proffitt was represented well "within the

range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970); *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977).

### ORDER

The appellee's petition for rehearing and suggestion for rehearing en banc has been submitted to the court. A poll of the court was requested, and in the poll a majority of the judges eligible to vote, voted to deny a rehearing en banc.

The panel considered the petition for rehearing and is of the opinion that it should be denied.

IT IS ORDERED that the petition for rehearing and suggestion for rehearing en banc are denied.

Entered at the direction of Judge Butzner, with the concurrence of Judge Lay. Judge Russell, Judge Widener and Judge Hall dissent from the denial of rehearing en banc.