**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4263

JOHNNY MACK BROWN,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-94-27)

Argued: June 3, 1997

Decided: September 4, 1997

Before RUSSELL, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Deborah C. Wyatt, WYATT & CARTER, Charlottes-
ville, Virginia, for Appellant. Thomas Ernest Booth, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Johnny Brown was convicted of one count of conspiracy to distribute crack cocaine and two counts of distributing cocaine. He was sentenced to life in prison. Brown appeals.

I.

Federal and state authorities arrested Brown in 1994 for distributing cocaine and crack cocaine. During a search of his home and adjacent garage, the agents seized drug paraphernalia, 55 grams of crack cocaine, guns and cash.

Before trial, the district court ordered a psychiatric evaluation of Brown's competency to stand trial because the court learned Brown had been briefly committed for psychiatric evaluation in January 1995. After the court-appointed psychiatrist assessed Brown, the district court found him competent to stand trial, and denied his request for an independent evaluation. The court also denied Brown's request for financial assistance in preparing his defense.

During Brown's jury trial, witnesses testified that Brown began distributing cocaine in 1992 or earlier. Other witnesses testified about the daily operations and scope of Brown's drug conspiracy. Most of the witnesses against Brown had been involved in the conspiracy, and the Government secured their testimony through plea agreements for lenient sentences.

The Government elicited the following testimony at trial that is pertinent to this appeal. Joseph Bergas testified he sold cocaine to Michael Terrell, who in turn sold it to Brown. Richie Hernandez also testified to selling cocaine to Brown. Other witnesses, including informants assisting the Virginia State Police, testified they bought cocaine

2

from Brown's subordinates, including Brown's son, Hines Washington.

Sol Cepero testified she was a drug courier and that she delivered cocaine from New York to Brown in Virginia. After she was arrested for shoplifting during one courier trip, she agreed to cooperate with police in their drug investigations. She allowed Virginia police and the FBI to tape record a phone call she placed to Brown's residence, during which she hoped to arrange a cocaine delivery with Brown. Whoever answered the phone neither identified himself nor made any incriminating remarks. The Virginia police later destroyed the tape recording.

II.

Brown raises numerous issues, which we address in turn.

A.

Brown's main challenge to his convictions is that the district court abused its discretion in limiting his cross-examination of witnesses who testified pursuant to plea bargains with the United States. We review the district court's rulings limiting cross-examination for abuse of discretion.[1]

The bulk of the evidence against Brown consisted of testimony by other drug dealers and coconspirators. Most of these witnesses agreed to testify against Brown as part of their plea bargains with the United States. They promised to provide "substantial assistance" to the prosecution in exchange for recommendations by the United States Attorney to the court that they receive reduced sentences. In a pretrial motion, Brown's attorney sought permission to inquire about the minimum and maximum penalties each witness faced. The district court denied the motion and forbade such questioning by Brown's attorney.

Brown now argues that these restrictions on cross-examination

_____

[1] **United States v. Moore**, 27 F.3d 969, 974 (4th Cir. 1994).

3

unfairly hampered his defense. We disagree. It is true that a defendant has the right to explore a witness' bias or motivation in testifying by cross-examining that witness.[2] But it is also true that the district court may limit cross-examination that is cumulative, confusing or only marginally relevant.[3]

In United States v. Tindle,[4] we held that where evidence of a cooperation agreement between a witness and the government was before the jury, the court did not abuse its discretion in refusing to admit evidence of a potential life sentence faced by the witness.[5] Similarly, in United States v. Ambers,[6] we held that the court did not err in refusing to allow cross-examination of the witness regarding his understanding of his agreement and its application of the Sentencing Guidelines.[7] The cross-examination proposed by the defendant would have required that the witness engage in a technical analysis of the Sentencing Guidelines. We reasoned that such testimony would do little to illuminate the witness' subjective understanding of his plea agreement, and would also confuse the jury.[8]  In Tindle and Ambers, the defendant had the opportunity to cross-examine the witness concerning the existence of the plea agreement and its general terms. In Ambers, the defense also entered several plea agreements into evidence.

Here, the record reflects that Brown questioned the Government's witnesses about their plea agreements, their subjective understanding of what the plea agreements meant, and put into evidence the written plea agreement of one witness (redacted to remove any mention of that witness' maximum sentence). Thus, Brown was able to expose before the jury the witnesses' possible biases and motives in testifying on behalf of the Government, thereby satisfying his constitutional

_____

[2] **Davis v. Alaska**, 415 U.S. 308, 316-17 (1974).
[3] **Delaware v. Van Arsdall**, 475 U.S. 673, 678-79 (1986). See also Fed. R. Evid. 611(a).
[4] 808 F.2d 319 (4th Cir. 1986).
[5] Id. at 328.
[6] 85 F.3d 173 (4th Cir. 1996).
[7] Id. at 176-77.
[8] Id.

4

right to confront witnesses against him. We hold that the district court did not abuse its discretion in refusing to allow Brown to cross-examine the cooperating witnesses regarding their potential maximum sentences.

B.

Next, Brown raises two issues relating to pretrial procedures.

1.

He first argues his convictions should be reversed because the district court erred in denying him in forma pauperis ("IFP") status for defense services. The United States concedes that the district court erred in denying Brown IFP status for defense services, but asserts the error does not require the reversal of Brown's convictions. We agree.

A defendant's request for financial assistance for defense services must be made in an ex parte application, and the district court must consider the request in an ex parte proceeding. [9] In this case, Brown's counsel made the request, and the court denied it, during a motions hearing in open court.

Brown's counsel did not object to either the ruling or to the court's failure to consider the request in an ex parte proceeding. We therefore review the district court's action for plain error under Federal Rule of Criminal Procedure 52(b). To find reversible error under this standard, we must establish that: (1) an error occurred; (2) the error was obvious; and (3) the error was so prejudicial that it affected the outcome of the trial.[10] If those requirements are satisfied, we must also decide if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[11]

The district court erred in two respects. Even though a defendant

_____

[9] 18 U.S.C.A. § 3006A(e)(1) (West Supp. 1997).
[10] **United States v. Olano**, 507 U.S. 725, 732-37 (1993); United States v. Perkins, 108 F.3d 512, 516 (4th Cir. 1997).
[11] **Olano**, 507 U.S. at 736.

is able to afford a lawyer, he may still be entitled to financial assistance for defense services.**12** The district court, therefore, erred in refusing Brown's request for services based solely on the fact that he was represented by retained counsel. The district court also erred in failing to evaluate Brown's request in an ex parte proceeding.**13** The errors meet the first two prongs of Olano, but Brown's claim fails under the third prong, because Brown failed to demonstrate prejudice to his defense resulting from the district court's ruling.**14** Brown presented nine witnesses at trial, and six at the sentencing hearing. He made no showing of necessity as to other witnesses. **15** He never identified to the district court, or to this court, any witnesses he was unable to call because he lacked subpoena fees. Nor did he identify any other defense services he was deprived of as a result of the district court's ruling.

For the foregoing reasons, we hold the district court's errors do not require reversal of Brown's convictions.

2.

Second, Brown argues the district court erred because before trial, and again before sentencing, it denied Brown's request for an independent examination to determine his mental status and competency to stand trial. We review the district court's rulings for abuse of discretion.**16**

In January 1995, a psychiatrist temporarily committed Brown to a hospital for observation. When this information came to the attention of the district court, it conducted a hearing on the matter and ordered

_____

**12 Proffitt v. United States**, 582 F.2d 854, 857 (4th Cir. 1978).
**13 See Lawson v. Dixon**, 3 F.3d 743, 752 (4th Cir. 1993) (noting 18 U.S.C. § 3006A(e)(1) specifically requires ex parte proceeding).
**14 See United States v. Perrera** , 842 F.2d 73, 77 (4th Cir. 1988) (showing of actual prejudice necessary for reversal of conviction after denial of § 3006A(e)(1) request).
**15 See** 18 U.S.C.A. § 3006A(e)(1) (requiring finding of indigence and necessity); Fed. R. Crim. P. 17(b) (same); Lawson, 3 F.3d at 750 (same).

**16 United States v. George**, 85 F.3d 1433, 1436-37 (9th Cir. 1996).

6

Brown to undergo a mental competency examination. **17** Although the court ordered Brown to be examined at a facility in Butner, North Carolina, the Government had him examined in Petersburg, Virginia, by Dr. Michael Morrison. Dr. Morrison concluded that Brown was mentally competent to stand trial, and that he was"malingering," meaning that Brown was attempting to feign mental illness. The district court then found Brown competent to stand trial, and subsequently denied his motion for an independent evaluation.

Although Brown was diagnosed as schizophrenic in 1969, there was no evidence showing abnormal behavior by him after that time. Brown did not allege any other facts indicating he was insane at the time of the crimes, nor did he ever propose to assert an insanity defense.**18** Under these circumstances, we hold that the district court did not err in refusing Brown's request.

3.

Brown asserts numerous other errors, all of which we find meritless.

a.

Brown raises two claims of prosecutorial misconduct. A witness against Brown, Kenny Keyton, committed perjury. Keyton testified he had only been charged with driving offenses, when in fact he had been convicted of a felony and was facing four state charges. Brown argues the prosecutor knew or should have known of Keyton's perjury, and that because Keyton was an important witness against him, his convictions should be reversed.

_____

**17** <u>See</u> 18 U.S.C.A. § 4241(a) (West 1985) (requiring examination "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect" that prevents him from understanding or assisting in his trial).
**18** <u>See United States v. Walker</u>, 537 F.2d 1192, 1195 & n.6 (4th Cir. 1976) (no independent exam required absent allegation of insanity); <u>United States v. Chavis</u>, 476 F.2d 1137, 1142 (D.C. Cir. 1973) (defendant not automatically entitled to independent exam under 18 U.S.C. § 3006A(e)).

After trial, Brown moved for a new trial based on Keyton's perjury. While the district court charged the prosecution with knowledge of the perjured testimony, it denied the new trial because of the overwhelming evidence against Brown. We agree with the district court that Keyton's testimony was cumulative, and find no error in its denial of a new trial.

Next, Brown claims his indictment should have been dismissed because the Government destroyed potentially exculpatory evidence. Charlottesville Detective Edward Palmateer testified he destroyed the tape of Cepero's call to Brown because he believed it had no value. In Arizona v. Youngblood,[19] the Court held that destruction of potentially exculpatory evidence does not rise to the level of a denial of due process absent a showing of bad faith by the police. Bad faith turns on the officer's knowledge of the exculpatory nature of the evidence at the time of destruction.[20] Palmateer testified that at the time of destruction, he was unaware that Brown was the target of an investigation. Furthermore, the person who answered the phone at Brown's number never identified himself, and Palmateer believed the answerer was aware the police were listening to the conversation and so spoke guardedly. The district court ruled that Palmateer did not act in bad faith when he destroyed the tape, and we agree.

Even if Palmateer acted in bad faith, Brown's claim still fails. In California v. Trombetta, the Court ruled that lost evidence is constitutionally material if it was exculpatory before destruction and the defendant cannot obtain comparable evidence by any other means.[21] The availability and testimony of the three witnesses to the content of the phone conversation provided Brown with an adequate substitute for the tape itself. Brown's defense, therefore, was not prejudiced by the destruction of the tape. We hold there was no error in the district court's ruling.

_____

[19] 488 U.S. 51 (1988).

[20] Id. at 56 & n.*.

[21] 467 U.S. 479, 487 (1984).

8

b.

Brown next argues that his convictions were based on impermissible hearsay. Joseph Bergas, a coconspirator of Brown's, testified regarding statements made by other conspirators,"Pee Wee" Mills and Michael Terrell. Federal Rule of Evidence 801(d)(2)(E) establishes that statements made by coconspirators are not hearsay when they are made during the course of, and in furtherance of, the conspiracy.

Testimony established that Mills, Terrell and Bergas were involved in a conspiracy, and that Brown was involved as well. For example, Bergas asked Mills and Terrell to identify the sub-dealers in the distribution chain so he could be assured of getting paid. Mills and Terrell identified Brown as a sub-dealer in their organization. Thus, the identification by Mills and Terrell of Brown was in furtherance of the conspiracy and therefore not hearsay.

c.

Next, Brown challenges the sufficiency of the indictment and the related jury instructions. The indictment alleged that the conspiracy began "on a date unknown . . ., but not later than the [s]ummer of 1992 . . . ." It also alleged that Brown conspired with "diverse other people known and unknown." Brown contends that this language rendered the indictment unconstitutionally vague, because it did not supply him with notice of the crime charged or enable him to plead the Double Jeopardy Clause if applicable.[22]

Brown's contentions are without merit. In United States v. Grubb,[23] we held that an indictment alleging a conspiracy starting "on or before January 3, 1972" was sufficient. As to Brown's contention that all of the alleged coconspirators need to be named, in United States v. American Waste Fibers Co. Inc.,[24] we upheld the sufficiency of an

---

[22] **See United States v. Miller** , 471 U.S. 130, 134-35 (1985) (indictment sufficient where it gave notice allowing defendant to mount defense and allowed defendant to plead it as a bar to subsequent prosecutions).
[23] 527 F.2d 1107, 1109 (4th Cir. 1975).
[24] 809 F.2d 1044, 1046 (4th Cir. 1987).

9

indictment alleging a conspiracy with persons known and unknown. Accordingly, we find no error in the district court's refusal to dismiss the indictment.

Finally, Brown attacks the jury instruction given by the district court regarding conspiracy. He claims the instructions were so vague that they allowed the jury to convict him of other, uncharged conspiracies. However, the record reveals the district court instructed the jury that if it found the charged conspiracy did not exist, it was obligated to acquit Brown, even if it found the existence of another conspiracy. Brown's challenge, therefore, is meritless.

d.

Brown alleges several errors in his sentencing. We have reviewed those assignments of error and find them to be without merit.

III.

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

10