Richard C. LOE, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

Crim. A. No. 77–00125–R.
Civ. A. No. 80–0032–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 29, 1982.

---

Gregory L. Murphy, Alexandria, Va., for petitioner.

Leonie M. Brinkema, Asst. U. S. Atty., Alexandria, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner Richard C. Loe ("Loe") brings this proceeding under 28 U.S.C. § 2255 attacking the validity of the sentence imposed on him by this Court on January 9, 1978 after conviction by jury trial of the October 6, 1975 robbery of a Richmond branch of United Virginia Bank in violation of 18 U.S.C. § 2113(a) and (d). Loe contends that he was denied the effective assistance of counsel at his trial by his court-appointed counsel's failure to investigate and raise the issue of Loe's competence to stand trial and the defense of insanity, and his failure to seek examination of Loe by a private psychiatrist under 18 U.S.C. § 3006A(e) to determine his state of mind at the time of the offense.[1]

### I. *Background*

Resolution of Loe's claim requires consideration of the circumstances surrounding both the Richmond trial as well as his trial in the Alexandria Division of this Court for the October 22, 1975 robbery of the Annandale, Virginia office of the Clarendon Bank and Trust Company. Loe was indicted by a federal grand jury for the Annandale robbery on November 4, 1975. A plea of guilty was entered to the charge on November 28, 1975. When the court refused Loe's January 2, 1976 request for leave to withdraw his guilty plea, Loe appealed.

During the pendency of this appeal, Loe was transferred to the custody of Virginia state authorities in connection with state charges arising out of the October 6, 1975 Richmond robbery. Dr. R. Finley Gayle,

---

**1.** 18 U.S.C. § 3006A(e) provides that counsel for an indigent defendant may obtain by *ex parte* application authorization for payment by the government for "investigative, expert, or other services necessary for an adequate defense...."

III, a professional psychiatrist who examined Loe at the direction of the state authorities, concluded that he was not competent to stand trial. After the state charges were dismissed, Loe was returned to federal custody.

The Court of Appeals for the Fourth Circuit then reversed the district court's refusal to allow Loe to withdraw his guilty plea to the Annandale charge and remanded the case to permit entry of a new plea. *United States v. Loe*, 551 F.2d 310 (4th Cir. 1977) (unpublished). At his March 11, 1977 rearraignment, replacement counsel was appointed in Loe's behalf after his original court-appointed attorney withdrew citing difficulties in working with Loe. Loe entered a plea of not guilty. Upon the government's motion, the court ordered on March 15, 1977 that Loe undergo a psychiatric examination under 18 U.S.C. § 4244 to determine his then sanity and ability to assist in his own defense.

Pursuant to the court's order, Dr. Enrich Reinhardt examined Loe for about 30 minutes at the Alexandria city jail on March 22, 1977. He concluded that Loe was not able to assist in his defense, but recommended further examination over an extended period of time to ensure that he was not feigning insanity. On the strength of that suggestion, Loe was transferred on May 14, 1977 to the Federal Correctional Institution at Springfield, Missouri for mental examination and evaluation at the Springfield Medical Center. After five weeks of observation, a team of Springfield doctors concluded that Loe was competent to stand trial and that he was accountable for his actions on the day of the Annandale robbery.[2]

Loe's Alexandria counsel filed a formal notice of insanity defense with the court on July 7, 1977. He obtained authorization in two separate requests under 18 U.S.C. § 3006A(e) for the expenditure of funds to have Dr. Gayle and Dr. Reinhardt testify at Loe's trial as to his mental condition. These § 3006A(e) requests were made solely to ensure the attendance of these two psychiatrists at Loe's trial, and did not entail any additional examination or treatment of Loe. Loe's Alexandria counsel made no further requests under § 3006A(e) for psychiatric examinations of Loe relating either to his then mental condition or his sanity at the time of the Annandale robbery.

Meanwhile, Loe was indicted by federal grand jury on August 2, 1977 for the October 6, 1975 robbery of the Richmond bank. At his August 10, 1977 arraignment, Loe stood mute and either could or would not communicate with the court or with the attorney appointed to represent him in the Richmond proceeding.[3] After denying a motion by Loe's counsel to withdraw because of the defendant's refusals to communicate with him, the court entered a plea of not guilty.[4] *Sua sponte*, the court ordered that Loe be examined under § 4244:

THE COURT: [Government Counsel], prepare the necessary papers so we can have an examination of Mr. Loe.

[GOVERNMENT COUNSEL]: Yes, sir.

[GOVERNMENT COUNSEL]: Would the Court want that done by a local psychiatrist?

THE COURT: Yes.

[LOE'S COUNSEL]: He is indicted in Alexandria as well. It may have been done there. I don't know.

THE COURT: They will check it.

[LOE'S COUNSEL]: All right, sir.

---

2. On June 15, 1977, the Chief of Psychiatry at the Springfield Medical Center, Jack Eardly, M.D., wrote to Judge Albert V. Bryan to relate that the opinion of the Springfield staff was that Loe was "mentally competent to stand trial and was responsible at the time of the alleged offense." Dr. Eardly enclosed the staff's reports, one of which was signed by Nicola V. Kunev, M.D., and the other by Dr. Eardly.

3. The attorneys appointed to represent Loe in the Alexandria and Richmond cases were, of course, separate individuals with no relation to each other. Hereinafter, when a need to differentiate them arises, they will be referred to as, "Alexandria counsel" and "Richmond counsel."

4. Transcript of Arraignment Proceedings, at 4–5 (August 10, 1977).

THE COURT: We will set it down for trial.

Mr. Loe—

[GOVERNMENT COUNSEL]: If Your Honor please, Mr. Loe is scheduled for trial in Alexandria on the 23rd of August.

THE COURT: On what charge?

[GOVERNMENT COUNSEL]: I believe it is a similar charge.

THE COURT: You mean up there?

[GOVERNMENT COUNSEL]: Yes, sir.

THE COURT: All right.

Mr. Loe, do you intend to cooperate with the Court?

Are you Richard Clifford Loe?

All right, let's have him examined. You may be seated, thank you.

Why don't we continue it, Mr. [Loe's Counsel], until we get this report?

[LOE'S COUNSEL]: All right, sir.

THE COURT: All right.[5]

This § 4244 examination was never conducted, however, for reasons reflected in the transcript of a hearing before the court the following day, August 11, 1977:

THE COURT: Gentlemen, after we met yesterday—I am not really sure how I got the information, whether somebody told one of my law clerks, or one of you gentlemen told me—but I think Mr. Loe has already been examined.

[GOVERNMENT COUNSEL]: Sir, he has been sent to Springfield pursuant to an order by Judge Bryan under 4244. It is due back for a trial.

THE COURT: That report, I gather, is in Alexandria.

[GOVERNMENT COUNSEL]: Yes, sir, it is.

THE COURT: See to it that a copy goes to Mr. [Loe's counsel], please—

[GOVERNMENT COUNSEL]: Yes, sir, I will.

THE COURT: —for use in this case.

I assume that report found Mr. Loe to be competent?

[GOVERNMENT COUNSEL]: Competent to stand trial, yes, sir.

THE COURT: We best set this for trial, Mr. [Loe's Counsel].

[LOE'S COUNSEL]: All right, sir.

THE COURT: Since there has been no waiver, we are going to set it with a jury. If Mr. Loe changes his mind, or—well, I don't know what. If he decides to cooperate, he can tell us if he wants a jury.

[LOE'S COUNSEL]: All right, sir.

THE COURT: September 9? Can you do that then, Mr. [Loe's counsel]?

[LOE'S COUNSEL]: Yes, sir.

[GOVERNMENT COUNSEL]: Fine for the United States, Your Honor. Would that be at 10:00 o'clock?

THE COURT: 10:00 o'clock. With a jury.

[GOVERNMENT COUNSEL]: Yes, sir.[6]

A copy of the Springfield report was filed with the court in Richmond on August 26, 1977.

On August 23, 1977, Loe proceeded to trial in Alexandria on the Annandale charge.[7] The first defense witnesses called by Loe's Alexandria counsel were laypersons who testified about Loe's unusual past behavior. William Loe, the defendant's brother, related several episodes of erratic behavior[8] and reported on Loe's father's psychiatric problems,[9] Loe's twin brother's suicide and his sister's attempted suicide.[10] Joseph Bonucelli, a social worker and super-

5. *Id.* at 5–6.

6. Transcript of Proceedings, at 2–3 (August 11, 1977).

7. It should be noted at this point that although various district judges from the Alexandria Division of the United States District Court for the Eastern District of Virginia presided over the pre-trial matters in Loe's case in that Division, the same district judge, the author of this opinion, heard the pre-trial matters in the Richmond case, and presided over both the Richmond and Alexandria trials.

8. Transcript of Trial in Alexandria Division, at 74–75 (August 23, 1977) ("Alexandria Tr.").

9. Alexandria Tr. at 69.

10. *Id.* at 76.

intendent of the Northern Virginia Detention Home when Loe was confined there for a short time, described Loe's attempted suicide at that institution through ingestion of aspirin.[11] Loe's girlfriend, Susan Cloud, related other occasions of Loe's seemingly abnormal actions and testified that he was not under the influence of drugs or alcohol during all but one of the incidents.[12] Thomas Van Walker, a friend of Loe's, described a similar episode when the police were called, but could not be sure whether or not Loe was drinking at the time.[13] Defense counsel then raised the issue of Loe's competency to stand trial.[14] Out of the presence of the jury, Dr. Reinhardt testified to his belief that Loe was unable to assist in his defense. This opinion rested on his 30 minute interview with Loe the previous March, review of reports from Springfield and a state hospital, letters recently received from Loe, and his observation of Loe's courtroom demeanor.[15] After cross-examination emphasized the brevity and staleness of Dr. Reinhardt's March examination,[16] the court, relying in part on the report of the Springfield staff, concluded that Loe was competent to stand trial.[17]

The jury was then returned to the courtroom and heard Loe's expert testimony in support of his insanity defense. Dr. Gayle, testifying that he had interviewed Loe for only 30–45 minutes and that he had simply recommended that he be further examined, in practical effect admitted that he had no opinion on Loe's then mental capacity or his sanity at the time of the offense.[18] Dr. Reinhardt, whose March, 1977 examination of Loe was directed only at determining Loe's capacity to stand trial, testified that his own observation had not been sufficient to reach a diagnostic impression or opinion as to Loe's mental condition at the time of the crime.[19] He stated only that Loe was a victim of "preoccupied unstable mental condition with paranoid features" and that he was incompetent in March of 1977 and presently incompetent.[20]

The government presented several witnesses in rebuttal to this insanity defense. A Richmond police officer testified that Loe had stated to him shortly after he met with Dr. Gayle that he had "fooled" the psychiatrist into thinking he was insane.[21] Three lay witnesses testified that Loe had not appeared to be acting abnormally at the time of the bank robbery or just before the trial.[22] Dr. Kunev, of the Springfield staff, testified that, based on his observation at that facility, Loe was both competent and sane in October, 1975.[23] The jury rejected Loe's insanity defense and returned a verdict of guilty on August 24, 1977.

On September 8, 1977, Loe came before the court in Richmond upon the government's motion that he be forced to restore his appearance to that of the day of his arrest by shaving off his beard. The court entered such an order, and Loe proceeded to trial the following day, September 9, 1977. Neither Loe's competency nor insanity at the time of the crime was addressed further by either the court or the parties.

11. *Id.* at 84–85.

12. *Id.* at 92–96.

13. *Id.* at 96–100.

14. Loe's Alexandria counsel stated that "[a]s a result of the Springfield report and in talking to Dr. Reinhardt recently, I just was surprised to find it was his continuing belief he is incompetent to stand trial." Alexandria Tr. at 104.

15. Alexandria Tr. at 102–108.

16. *Id.* at 108–124.

17. *Id.* at 125.

18. *Id.* at 126–134. *See United States v. Loe*, 639 F.2d 783 (4th Cir. 1981) (*per curiam; unpublished*), at 6.

19. Alexandria Tr. at 134–144.

20. *Id.* at 137.

21. *Id.* at 148–152. Loe reportedly told the officer "I'm as sane as you are. . . . Those quacks . . . I just fooled them." *Id.* at 150. At the trial, Loe's counsel elicited from Dr. Gayle the latter's opinion that such statements by Loe "wouldn't necessarily make him sane or responsible. . . ." *Id.* at 133.

22. *Id.* at 145–148; 152–154; 156–157.

23. *Id.* at 157–184.

The Monday, October 6, 1975 Richmond robbery was the work of a lone blonde-haired male bandit wearing a light blue denim jacket, and weighing 150–160 pounds. He entered the bank around 11:20, drew a small snub-nosed nickel plated revolver and robbed a teller, Alice Newsome, of $2,348. During her trial testimony, Newsome identified Loe as the culprit, identified a group of pictures taken by a bank surveillance camera at the time of the robbery, and testified that a gun found in Loe's car on October 22, 1975 "look[ed] like ..." the gun the robber used.[24] Sandra Ondishko, a bank officer who had witnessed the robbery, described the robber's appearance, with "a little doubt ..." identified Loe as the person who robbed the bank, testified that a blue denim jacket also found in Loe's car was "very similar" to the one worn by the robber, and related that she had picked Loe's picture out of an array of photographs shown her about four to five weeks before trial as resembling the man who robbed the bank.[25] Another teller, George Groseclose, identified Loe without "any doubt at all" as the man who committed the robbery.[26] The other evidence relied on by the government consisted of testimony that the gun and denim jacket were found in a search of Loe's automobile, and latent palm prints taken from the counter in front of Newsome's teller window, supported by testimony of the police officer who lifted the prints, the officer who took inked prints of Loe's fingers and palms and an FBI print specialist who matched the latent print from the bank with Loe's palm prints. The government also elicited a great deal of testimony regarding the manner in which the teller counters were routinely cleaned each evening, that they were cleaned the weekend before the robbery, that Loe was not seen in the bank on Monday before the robbery occurred, and that the area surrounding Newsome's window was secured after the crime to preserve any evidence present therein.

To rebut the strong evidence against the defendant, Loe's counsel attempted on cross-examination of the three eye-witnesses, Newsome, Ondishko, and Groseclose, to sow doubt as to the strength of their recollections of the robber's appearance, their opportunities to observe him, and the certainty of their courtroom identifications of Loe as the person who committed the robbery. He also sought to leave the jury with the impression that their in-court identifications of Loe had been induced, or their recollections artificially enhanced, by an array of photographs, including Loe's, shown them by government agents four to five weeks before the trial. In his cross of the officer who had taken inked prints from Loe, Loe's counsel emphasized the possibility that the exhibit of prints which matched those found in the bank could have been those of another man, but this doubt was rebutted by the officer's identification of the defendant as the source of the prints. Loe's counsel introduced the testimony of a Richmond policeman, Donald Gery, that he had shown an array of ten photographs, one of which was of Loe, to Newsome shortly after the robbery, and she had failed to pick any one of the pictures as that of the robber. He then recalled to the stand a bank officer to establish that Loe had an account with United Virginia Bank, apparently in an effort to give some alternative explanation of the presence of Loe's palm print on the teller counter. The government, in its rebuttal, demonstrated that no transactions had occurred in Loe's account since June 4, 1975. Loe's counsel's third and final witness was the defendant himself, who denied robbing the bank, but could not remember where he was on the day of the robbery. Loe admitted that he had conducted no business in the bank since the previous summer, and that around the time of the robbery he had owned a denim jacket and gun similar to the government's exhibits. In his closing argument, Loe's counsel stressed the defendant's denial of the charge, the possi-

---

**24.** Transcript of Trial in Richmond Division, at 55–62, 67 (September 9, 1977) ("Richmond Tr.")

**25.** Richmond Tr. at 69–80.

**26.** *Id.* at 83–87.

bility that the teller counter had not been cleaned thoroughly, that the government had not shown that the robber had ever placed his palm on the counter, that the inked prints which matched the latent prints in the bank could have come from someone other than the defendant because of sloppy recordkeeping by the police, the uncertainty he saw in the eyewitness identifications, and that the gun and jacket could have belonged to someone else.

The jury returned a verdict of guilty, and Loe was sentenced on January 9, 1978 to 16 years imprisonment, to run concurrently with a like sentence imposed for the Annandale offense. The two convictions were affirmed by the Court of Appeals for the Fourth Circuit in *United States v. Loe*, 586 F.2d 1015 (4th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979). Loe then brought a § 2255 proceeding attacking the Alexandria conviction on the ground that he was denied the effective assistance of counsel because of his attorney's alleged failure to investigate and prepare defenses of incompetency and insanity. He filed a similar petition regarding the Richmond conviction, adding the claims that the Richmond charge was brought in retaliation for his exercise of his right to appeal in the Alexandria case, and that the court-ordered § 4244 examination was never performed. The court has dismissed these additional claims, the latter on the ground that the June 15, 1977 § 4244 Springfield report generated for the August 23, 1977 Alexandria trial was sufficient to establish Loe's competence to stand trial for the September 9, 1977 Richmond proceeding.

After the Court denied any relief on the Alexandria petition, the Court of Appeals vacated the judgment, remanding the case to this Court to inquire into Loe's Alexandria counsel's reasons for declining to seek a psychiatric examination of the defendant under § 3006A(e) to determine if such failure denied the defendant the effective assistance of counsel. *United States v. Loe*, 639 F.2d 783 (4th Cir. 1981) (*per curiam*; unpublished). The Court has determined that counsel's failure in the Alexandria case

to procure such an examination amounted to a denial of the effective assistance of counsel, and has ordered an examination of Loe in an effort to determine his state of mind at the time of the Annandale offense. *Loe v. United States*, 545 F.Supp. 662 (E.D.Va.1982).

## II. *The Assistance of Counsel Inquiry*

Loe's remaining claims in this proceeding are that his counsel rendered ineffective assistance at his trial because of his alleged failure adequately to investigate and to raise the issue of Loe's incompetency to stand trial and the defense of insanity. As in his Alexandria petition, Loe contends that his attorney's failure to procure a psychiatric examination of Loe under § 3006A(e) to determine his state of mind at the time of the crime also amounted to the denial of the effective assistance of counsel.

■ Of course, the sixth amendment guarantee of the right to counsel includes the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Fisher*, 477 F.2d 300 (4th Cir. 1973). The test of the effectiveness of counsel is whether the attorney's representation "was within the range of competence demanded of attorneys in criminal cases." *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978), quoting from *McMann v. Richardson, supra*, 397 U.S. at 770–71, 90 S.Ct. at 1448–49. Effective representation does not require errorless representation. To merit relief, Loe must show that any error by his attorney "was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland, supra*, 561 F.2d at 544. *See Via v. Superintendent, Powhatan Correc-*

*tional Center,* 643 F.2d 167, 171 (4th Cir. 1981). The standard is an objective description of the competency normally demanded of attorneys. It is a flexible test, but counsel must perform at least certain specifics, *e.g.,* counsel should be promptly appointed for an indigent defendant, he should be given a reasonable opportunity to prepare to defend the defendant, he must confer with the defendant without undue delay and as often as necessary to advise him of his rights and elicit matters of defense or ascertain that potential defenses are unavailable, and he must conduct appropriate factual and legal investigations to determine if certain defenses can be used. *Marzullo, supra; Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). A court may also refer to state bar canons and the American Bar Association Standards Relating to the Defense Function to gauge the adequacy of counsel's representation. *Marzullo, supra.*

▮ Counsel has an affirmative obligation to make further inquiry where the facts known and available, or with minimal diligence accessible, to him raise a reasonable doubt as to the defendant's mental condition. "If reasonable grounds exist for questioning the sanity or competency of a defendant and counsel fails to explore the

matter, the defendant has been denied effective assistance of counsel." *Wood v. Zahradnick,* 430 F.Supp. 107, 111 (E.D.Va. 1977), *affirmed,* 578 F.2d 980 (4th Cir. 1978). *See Kibert v. Peyton,* 383 F.2d 566, 569 (4th Cir. 1967); *Owsley v. Peyton,* 368 F.2d 1002, 1003 (4th Cir. 1966); *McLaughlin v. Royster,* 346 F.Supp. 297 (E.D.Va.1972).

Clearly there were facts both known and available to Loe's counsel to raise some doubt regarding both the defendant's capacity to stand trial and his sanity at the time of the offense, giving rise to a correspondent duty on counsel's part to investigate both matters. Loe was uncooperative and refused to communicate with his counsel during their first two meetings.[27] He was similarly recalcitrant before the Court in his August 10 and August 11 appearances.[28] Uncertainty as to Loe's ability to aid in the preparation of his own defense had been raised in the preliminary stages of the Alexandria proceedings. State charges against Loe stemming from the Richmond offense had been dismissed upon a finding that he was unable to stand trial. Dr. Reinhardt reported in the Alexandria trial his opinion that Loe was incompetent. Loe's extensive history of mental instability, hospitalization and treatment cast some doubt on both his capacity to stand trial and his sanity at the time of the offense.[29] The

27. Affidavit of Loe's Richmond counsel, at 1–2 (July 30, 1980) ("Counsel Aff.").

28. Transcript of Arraignment Proceedings, *supra* note 4; Transcript of Proceedings, *supra* note 6.

29. At age 15, Loe was admitted to Eastern State Hospital in Williamsburg, Virginia on March 3, 1966 by court order. The hospital's report (Exhibit K–1 to Affidavit of Loe's Alexandria Counsel, submitted in Criminal Action No. 75–344–A) stated that Loe was of coherent thinking, normal feeling, good insight and "oriented in all spheres." The institution's impression was that Loe suffered only from a transient situational personality disturbance as an adjustment reaction to adolescence. Loe was committed by court order to Western State Hospital in Staunton, Virginia on April 25, 1966 and discharged on June 28, 1966 as Not Mentally Ill. (Exhibit K–1 to Affidavit). Mickey Silver, M.D., a psychiatrist at the federal penitentiary in Lewisburg, Pennsylvania, examined Loe on December 20, 1976 and found "no evi-

dence of a major mental illness." (Exhibit L to Affidavit). The same conclusion was reached by Dr. Milton Schmidt, also a Lewisburg psychiatrist, in his May 11, 1976 report on Loe. (Exhibit M to Affidavit). A May 19, 1976 report by Dr. Schmidt reveals that he had examined records from "a recent state trial in which doubts of Mr. Loe's competency were expressed by a psychiatrist, ..." but that his opinion remained unchanged. Though Loe was "quite uncooperative, vague, and evasive ...," he had shown "no signs of psychosis or major mental illness..." at the time of the Schmidt report. (Exhibit N to Affidavit). From 1967–1970, Loe underwent treatment for depression and periodically took anti-depressant drugs while incarcerated at the Virginia State Farm. Declaration of Richard C. Loe, ¶ 9(c) (August 27, 1981) ("Loe Declaration"). He was observed and treated by psychiatrists at the Virginia State Penitentiary for a 90-day period in 1970. Loe Declaration ¶ 9(d).

lay testimony adduced by Loe's Alexandria counsel in that proceeding described Loe's history of abnormal behavior, and Loe's Richmond counsel stated at the evidentiary hearing on this petition that he was aware of this background of mental instability. Lastly, Loe maintains that he informed his counsel that he did not feel competent to stand trial and requested that he present an insanity defense at trial.[30] Loe's counsel denies that Loe ever mentioned the incompetency issue, but admits that Loe initially asked him to present an insanity defense.[31] At any rate, there were obvious grounds for questioning Loe's ability to aid in his defense and his sanity at the time of the crime. The Court must determine whether Loe's counsel's efforts to satisfy his duty to explore the two matters were within the range of competence expected of criminal defense attorneys.

## A. Competence to Stand Trial

■ Loe's counsel both considered and explored the possibility that Loe was incompetent to stand trial on the Richmond charge. The matter was addressed at Loe's August 10, 1977 arraignment. Loe's counsel interviewed the defendant's girlfriend and contacted Loe's Alexandria counsel to discuss the details of Dr. Gayle's and Dr. Reinhardt's testimony at the Alexandria trial.[32] After the Alexandria trial, he interviewed "at length" Dr. Kuney of the Springfield staff on his opinion that Loe was competent to stand trial.[33] Counsel met with Loe on at least five occasions before the Richmond trial.[34] Once counsel suggested to the defendant that a defense based on reasonable doubt had some validity, Loe became very cooperative and helpful.[35] Counsel did not pursue the § 4244

examination ordered by the Court on August 10 because he was under the impression that at the August 11 proceeding the Court had ruled that the § 4244 examination performed for purposes of the Alexandria proceeding would suffice for the Richmond case and effectively had adjudicated Loe competent to stand trial on the basis of the Springfield report. The Court concludes that Loe's counsel made adequate inquiry into the question of Loe's competence to stand trial and reasonably assumed that the Court considered the issue to be determined by the Springfield report. This case differs from *Owsley v. Peyton, supra*, where the court held that an attorney's failure to present to the court available evidence which made uncertain the defendant's competency rendered his representation ineffective. Here, the evidence was before the Court, in the form of the Springfield report. Moreover, even if Loe's counsel erred to some degree in failing to pursue the issue more aggressively with the Court, it appears that any such error was harmless beyond a reasonable doubt and caused no prejudice to the defendant. *See Coles v. Peyton, supra. See also Wood v. Zahradnick*, 578 F.2d 980 (4th Cir. 1978). The Court was fully aware of Loe's mental condition at the time of the Richmond trial, having just presided over the Alexandria trial. In the latter, the Court heard Dr. Reinhardt's testimony and found Loe to be competent to stand trial in reliance on the Springfield report and the staleness and brevity of Dr. Reinhardt's examination of Loe. Dr. Kunev had not deviated from his opinion of Loe's competence after the Alexandria trial. Thus, even had Loe's counsel again presented this evidence to the Court, the Court undoubtedly would have found Loe competent.

---

**30.** Loe Declaration ¶¶ 3, 7.

**31.** Reply Affidavit of Loe's Richmond Counsel at 1–2 (September 14, 1981) ("Counsel's Reply Aff.")

**32.** Counsel Aff. at 2; Counsel's Reply Aff. at 1. Such was counsel's testimony at the evidentiary hearing on this petition.

**33.** Counsel Aff. at 2. Counsel so testified at the hearing before this Court.

**34.** Counsel's Reply Aff. at 2.

**35.** Counsel Aff. at 2; Counsel's Reply Aff. at 1.

B. *Insanity Defense; § 3006A(e) Examination*

■ Loe's counsel also investigated the merits of an insanity defense to the charge. He discussed with Loe's Alexandria counsel his experience with the defense and the testimony he elicited from Dr. Gayle and Dr. Reinhardt.[36] He reviewed the materials in the government's file on the Richmond case, including Loe's medical records, and spoke with Dr. Kunev concerning his opinion that Loe was sane at the time of the offense and that Loe had feigned insanity in his other examinations.[37] Counsel spoke with D. C. Gery, a Richmond detective subpoenaed on behalf of the government, who related to him that Loe had bragged and joked about how he had "fooled" Dr. Gayle and the state court into dismissing charges against him.[38] He did not, however, talk directly with either Dr. Gayle or Dr. Reinhardt.

Several conversations took place between Loe and counsel regarding the insanity defense, the contents of which are hotly disputed. Counsel relates that after considering the above material, along with information from Gery that one of the victims of the robbery had been unable to select Loe's picture as that of the culprit from a photographic array shortly after the crime, he concluded that an insanity defense would fare no better in the Richmond trial than it had in Alexandria, but that a plausible defense could be based upon reasonable doubt.[39] Loe's counsel maintains that he "bluntly" explained to Loe the negative aspects of the insanity course of action and advised him that the reasonable doubt defense had a greater likelihood of success.[40] According to his counsel, Loe indicated that he fully understood the import of this advice, agreed to adhere to it and thereafter became very cooperative.[41] Counsel informed Loe that he "would raise the insanity defense if [Loe] insisted, ..." but that his "chances were far better ..." if he relied on a reasonable doubt defense.[42] Loe, however, insists in his affidavit that he believed that "the insanity defense was [his] only real defense to the charges, ..." and that "[a]t no time did [he] indicate to [counsel] that [he] did not desire to present the defense." "I never agreed," says Loe, "to present a defense based solely on reasonable doubt."[43] At the hearing, Loe testified that his counsel was "negative" and "not interested" in an insanity defense since he felt it would not succeed. He reiterated that he never agreed to forego an insanity defense in favor of one based on reasonable doubt. Based on its view of the credibility of the witnesses, and in light of Loe's testimony in the Richmond trial that he did not commit the robbery, the Court is inclined to find that Loe did agree with counsel's advice that they rely solely on a reasonable doubt defense. That conclusion, however, is not the end of the inquiry, for Loe's consent to follow his counsel's suggestion is only as valid as the advice which informed that consent. If that advice was deficient in some manner, any consent resting on that advice was similarly defective. Loe had no choice but to rely on the choice made by his attorney, and the resolution of his claim of ineffective assistance must turn on whether that advice was within the range of competence required of the criminal defense bar.

It is obvious that Loe's counsel made a tactical decision to cast his, and Loe's, lot solely with a defense of reasonable doubt. In *Wood v. Zahradnick, supra,* the defend-

**36.** Counsel Aff. at 3; Counsel's Reply Aff. at 1.

**37.** Counsel Aff. at 2. Counsel so testified at the hearing on this petition.

**38.** Counsel Aff. at 2–3.

**39.** Counsel Aff. at 3. Counsel so testified at hearing.

**40.** Counsel Aff. at 3; Counsel's Reply Aff. at 1. Counsel so testified at hearing.

**41.** Counsel Aff. at 3; Counsel's Reply Aff. at 1. Counsel so testified at hearing.

**42.** Counsel's Reply Aff. at 1.

**43.** Loe Declaration ¶ 7.

ant was convicted of the rape, robbery and brutal beating of a 67-year old woman whom he had known his entire life. Despite evidence that the defendant may have been suffering from alcoholic pathological intoxication at the time of the crimes, his counsel failed to investigate this possible defense, relying instead on the defendant's testimony as to his heroin addiction and his inability to recall the events of the night in question. The attorney declined to pursue the insanity defense because he did not think that the defendant was insane at the time of the offense. Ruling that the attorney's personal opinion carried little weight in light of his failure to procure an expert evaluation available under Virginia law, the district court held that counsel's failure to investigate or raise the defenses of insanity and incompetence amounted to a denial of the effective assistance of counsel. The Court of Appeals affirmed, emphasizing that the attorney was not entitled to rely on his unsubstantiated personal opinion about the defendant's mental condition at the time of the rape and that even though an insanity defense was the only real defense available to the defendant, counsel "did nothing to explore the one avenue which offered a ray of promise." 578 F.2d at 982.

There is much to differentiate the instant action from *Wood.* Loe had a somewhat plausible reasonable doubt defense, since a key eyewitness failed to identify him in a photographic array shortly after the robbery, and Loe denied committing the crime. Also, Loe's counsel did explore the possible use of an insanity defense in an effort to satisfy his duty to conduct appropriate investigation of the facts and the laws involved. *See Coles v. Peyton, supra,* 389 F.2d at 226, *Jones v. Cunningham,* 313 F.2d 347, 353 (4th Cir.), *cert. denied,* 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963). He then made a tactical decision to abandon the insanity defense in favor of one based on reasonable doubt. Loe may now feel that this advice was in error.[44] As noted, however, "effective representation is not the same as errorless representation," and Loe "must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland, supra,* 561 F.2d at 544; *Taylor v. Starnes,* 650 F.2d 38, 41 (4th Cir. 1981); *Via v. Superintendent, Powhatan Correctional Center, supra,* 643 F.2d at 171. Courts are especially reluctant to second guess the tactics of trial lawyers, but must do so if the attorney's tactical decision was "so unreasonable in light of the need for the [evidence] that it amounted to a deprivation of an attorney who acted within 'the range of competence demanded of attorneys in criminal cases.'" *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977).

The record reveals that Loe's counsel's conclusion that an insanity defense had little chance of success in the Richmond trial rested on his own belief that Loe was "faking an insanity defense,"[45] Gery's expected testimony that Loe had bragged of "fooling" Dr. Gayle,[46] Dr. Kunev's opinion that Loe was mentally responsible at the time of the offense,[47] his discussions with Loe's Alexandria counsel on his experience with the defense and the failure of the defense in that proceeding.[48] The validity of Loe's counsel's advice, and his competence to make his tactical election, turn upon whether his investigation and preparation left him fully informed to make such a choice. If the inquiry which led him to his decision was deficient in some manner, his advice was correspondingly defective.

44. See *id.*

45. Counsel Aff. at 2. Counsel so testified at hearing.

46. Counsel Aff. at 2–3; Counsel's Reply Aff. at 2. Counsel so testified at hearing.

47. Counsel Aff. at 2. Counsel so testified at hearing.

48. Counsel Aff. at 2–3; Counsel's Reply Aff. at 2. Counsel so testified at hearing.

It is here that counsel's failure to procure a § 3006A(e) examination of Loe for purposes of the Richmond trial becomes crucial. Counsel's lay belief that Loe was not insane carries little force in light of his failure to obtain a § 3006A(e) expert examination of the defendant. *Wood v. Zahradnick, supra.* Such an evaluation could have resulted in an opinion to corroborate Dr. Gayle's view [49] that statements by Loe that he had "fooled" Dr. Gayle into believing Loe was insane did not necessarily indicate sanity. Counsel's reliance on the testimony by Dr. Kunev, a member of the Springfield staff who examined Loe pursuant to a § 4244 order, in his decision to abandon the insanity defense meant that the expert information available to him was incomplete. The § 4244 expert is expected to be neutral and detached, but the § 3006A(e) examiner can be a partisan witness for the defense. *United States v. Reason,* 549 F.2d 309, 311 (4th Cir. 1977). Counsel's dependence upon Loe's Alexandria counsel's lack of success with an insanity defense also left him ill-prepared to advise Loe on the proper approach to the Richmond trial. The Court has this day ruled that the assistance provided Loe by his Alexandria counsel was made ineffective by his failure to obtain a § 3006A(e) examination of the defendant before proceeding to trial. *Loe v. United States,* 545 F.Supp. 662 (E.D.Va.1982). Loe's Alexandria counsel attempted to rebut the Springfield determination that Loe was responsible for his actions at the time of the offense with testimony from Dr. Gayle and Dr. Reinhardt, neither of whom had formed any real opinion on Loe's state of mind at the time of the crime, and with lay testimony of Loe's abnormal behavior. He elected to forego the § 3006A(e) option because of his lay belief that the results would merely confirm the Springfield report. The Court ruled that the absence of any expert testimony in Loe's behalf rendered the § 3006A(e) examination necessary to the preparation and presentation of an adequate defense in that action, and that

counsel's failure to pursue it deprived Loe of the permissibly partisan perspective of a § 3006A(e) examiner. Since Alexandria counsel's preparation of the insanity defense was lacking in this regard, Richmond counsel's reliance on the Alexandria outcome in opting to abandon the defense bears the imprint of the deficiency. For the reasons stated by the Court in its opinion in Criminal Action No. 75–344–A, the Court concludes that Loe's Richmond counsel had a duty to seek a § 3006A(e) examination of the defendant in this action, since such services were necessary for his preparation of an adequate defense to the Richmond charge. *See Proffitt v. United States,* 582 F.2d 854, 857 (4th Cir. 1978), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2997, 64 L.Ed.2d 860 (1980); *United States v. Fessel,* 531 F.2d 1275, 1279 (5th Cir. 1976). If anything, the need for the examination was even more acute in this action to determine if the insanity defense was worth presenting, for the defense had failed in Alexandria in the absence of such an evaluation. As with Alexandria counsel, the only expert opinion on Loe's state of mind at the time of the crime available to Richmond counsel lay in the Springfield report and Dr. Kunev's testimony. Richmond's counsel's failure to procure a § 3006A(e) examination of Loe to assist in evaluating the merit of an insanity defense deprived Loe of the full benefit of that statute by denying him access to the expert opinion of a permissibly partisan examiner. Counsel has presented no explanation of his failure to obtain a § 3006A(e) exam. The Court has no alternative but to conclude that Richmond counsel's omission of such an examination, albeit innocently, rendered his preparation of Loe's defense inadequate and in turn, vitiates his tactical decision to abandon the insanity defense inquiry. This deficiency fell without the range of competence demanded of attorneys in criminal cases and constituted a denial of the effective assistance of counsel.

**49.** See note 21, *supra.*

Loe's relief in this petition will be patterned after that ordered in Criminal Action No. 75–344–R. In this jurisdiction, the denial of the effective assistance of counsel voids a conviction and entitles a defendant to a new trial unless the state or the government can establish lack of prejudice thereby. *See Coles v. Peyton, supra.* Counsel's failure to procure a § 3006A(e) examination may have been harmless beyond a reasonable doubt since it is possible that such an evaluation would not have assisted defense counsel in preparing his defense. *Proffitt v. United States, supra,* 582 F.2d at 859; *Wood v. Zahradnick,* 578 F.2d at 982. Since in this action, as in the Alexandria proceeding, Loe was denied the opportunity to determine with expert help whether he had a defense worth presenting in his trial, the relief here will correspond to that ordered in the Alexandria case. Accordingly, a private psychiatrist will be appointed to examine Loe to attempt to determine his mental state at the time the offense was committed. This examination will be joined with that ordered in the Alexandria action and will be conducted by the same psychiatrist. If his or her report "indicates the existence of a substantial question of criminal responsibility ..." and if Loe's counsel represents that he would rely on it on retrial, the Court's judgment will be vacated and a new trial granted. 582 F.2d at 859. Otherwise, Loe's judgment of conviction will stand affirmed.

An appropriate order will issue.