9 F.3d 117
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Kenneth JOHNSON, Petitioner-Appellant,
v.
Ron CHAMPION, Respondent-Appellee.
 No. 93-5018.
 United States Court of Appeals, Tenth Circuit.
 Oct. 19, 1993.
 
 1
 Before LOGAN and BRORBY, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Petitioner-appellant Kenneth Johnson was convicted in Oklahoma state court of first degree rape after former conviction of a felony. He brought a 28 U.S.C. 2254 petition for writ of habeas corpus, alleging ineffective assistance of counsel. He appeals from the district court's denial of the petition. We affirm.
 
 
 4
 At petitioner's trial D.M.B. testified that petitioner, whom she knew through her son, came to her house around 9:00 p.m. on August 14, 1980. He told her he had been in a car accident and hurt his hand. She washed and bandaged his hand. After trying unsuccessfully to telephone someone to pick him up, he raped D.M.B. He then made another telephone call and told someone to pick him up at 11th and Garnett. He left at about 10:00 p.m.
 
 
 5
 D.M.B. washed the bloody linens in cold water. She reported the attack to her personal physician the next morning. He examined D.M.B. and observed swelling and bleeding which he thought was evidence of forceful entry of the vagina. However, he did not perform a rape examination or preserve evidence because he was unable to introduce any type of instrument internally due to pain and swelling.
 
 
 6
 Petitioner testified at his trial that he had an auto accident sometime in August 1980 near his friend, Susie's, house. He went to her house and made some telephone calls. He then walked to a U-Tote-M on Garnett where he called his aunt and uncle. They picked him up on 21st and Garnett and took him to his parents' home. He cut his hand on a beer bottle at the U-Tote-M. He denied going to D.M.B.'s house that evening or raping her, although he admitted that his accident occurred a few blocks from her house. He did not know how D.M.B. knew that he had a car accident except that it was common knowledge in the neighborhood.
 
 
 7
 Petitioner's brother, Jerry Johnson, testified at trial that he saw petitioner at 9:00 p.m. at their parents' house the night petitioner wrecked his car, sometime in August 1980. He (Jerry) stayed at his parents' house until 9:30 p.m., then took petitioner to 11th and Garnett to get his car. He noticed that petitioner had cut his hand.
 
 
 8
 Petitioner was found guilty and sentenced to ninety-five years' imprisonment. His conviction was affirmed on direct appeal. His first federal habeas action was dismissed without prejudice for failure to exhaust state remedies.
 
 
 9
 Petitioner filed a state application for postconviction relief claiming ineffective assistance of counsel. The state trial court denied the application, but the state appellate court reversed and remanded for an evidentiary hearing. Following that hearing the state trial court made findings, concluded that petitioner was not denied effective assistance of counsel, and denied the application. The state appellate court affirmed. Petitioner's second state application for postconviction relief was denied.[2]
 
 
 10
 Petitioner commenced the present action for federal habeas corpus relief in August 1991, claiming ineffective assistance of counsel. Without holding an evidentiary hearing, a magistrate judge issued a report and recommendation adopting the state court findings pursuant to 28 U.S.C. 2254(d),[3] and concluding that petitioner received effective assistance of counsel. The district court agreed and denied the petition.[4]
 
 
 11
 To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The first prong of the Strickland test requires a showing that counsel's errors were so serious counsel "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id., that is, "counsel's representation fell below an objective standard of reasonableness," id. at 688. In evaluating counsel's performance, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
 
 
 12
 The second prong of the Strickland test requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. The defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 13
 The state court's conclusion that counsel provided effective assistance is not a finding of fact binding on the federal courts to the extent stated in 28 U.S.C. 2254(d). Id. at 698. "Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 2254(d) ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Id. We review these determinations de novo. United States v. Owens, 882 F.2d 1493, 1502 n.16 (10th Cir.1989).
 
 
 14
 Petitioner contends he should have been afforded a hearing in federal court. Where the facts are disputed, the federal district court must hold an evidentiary hearing on a habeas petition if the petitioner did not receive a "full and fair evidentiary hearing in a state court." Townsend v. Sain, 372 U.S. 293, 312 (1963), overruled in part on other grounds, Keeney v. Tamayo-Reyes, 112 S.Ct. 1715, 1717 (1992). Petitioner argues he was entitled to another evidentiary hearing because the state court's findings are erroneous. As will be explained more fully below, we conclude the state court findings are not erroneous. That those findings conflict with testimony provided by petitioner's witnesses does not mean the findings are erroneous or the hearing was inadequate.
 
 
 15
 Petitioner also appears to challenge the adequacy of the state court evidentiary hearing because his trial counsel, Frank Laphen, was not called as a witness at that hearing. However, the parties represented to the state court that Laphen had no independent memory of the case but made notes, and they would proceed with that understanding. Petitioner personally and through counsel stated that was agreeable to him. Neither party called Laphen as a witness. Thus, petitioner has not shown he was denied a full and fair hearing in state court.
 
 
 16
 Petitioner contends that Laphen was ineffective because he failed to interview several potential witnesses and failed to call several alibi witnesses to testify at trial. At the state court evidentiary hearing petitioner presented the testimony of Susie Barolin, Virgil Teague, Peggy Lou Johnson, and Tabitha Johnson, none of whom were called as witnesses at trial. Barolin testified that petitioner was at her house the day of the assault. She does not remember when he left but thought it was after dark. He returned a little while later because he had done something to his car.
 
 
 17
 Petitioner contradicted Barolin's testimony, claiming he left her house before dark. Barolin's assistance as an alibi witness is therefore questionable. We conclude there are no grounds under 2254(d) for disregarding the state court finding that Barolin would not have been able to provide an alibi.[5] The failure to call her as a witness did not constitute ineffective assistance.
 
 
 18
 Virgil Teague, petitioner's uncle, testified at the evidentiary hearing that petitioner called him at about 6:00 p.m. on August 14, 1980, from a telephone booth. Petitioner told Teague he had been in a car accident and hurt his hand in the accident. Teague picked up petitioner around dusk, and drove him to his parents' house. They arrived at about 9:00 p.m. Teague left about a half-hour later. Teague claimed he gave this information to Laphen before trial. Laphen's notes indicate that he spoke with Teague before trial.
 
 
 19
 The state court found Laphen's notes indicated petitioner called Teague at about 10:00 p.m., and Laphen may have determined that Teague's testimony would not help the case. At the top of Laphen's notes is Virgil Teague's name. Underneath Teague's name the notes state "called from Mingo or Garnett-" with a symbol indicating around or about 10 p.m., and go on to describe the details of the car accident. R. Supp. Vol. I, State's Ex. 2. While not completely free of ambiguity, these notes are adequate to support the state court's finding that Teague told Laphen petitioner called him at 10:00 p.m. Because D.M.B. testified that petitioner called someone to pick him up and then left her house at around 10:00 p.m., Laphen reasonably could have chosen not to call Teague as a witness because Teague would have been unable to establish an alibi.
 
 
 20
 Peggy Johnson, petitioner's mother, testified at the evidentiary hearing that Teague brought petitioner home at about 9:00 or 9:30 p.m. the night of August 14, 1980. She provided this information to Laphen before trial. Even if this testimony would have established an alibi, we conclude Laphen's failure to call Peggy Johnson as a witness did not constitute ineffective assistance of counsel. The same testimony was presented at trial by Jerry Johnson. Counsel is not ineffective for failing to present cumulative evidence. United States v. Jackson, 935 F.2d 832, 846 (7th Cir.1991); Brogdon v. Blackburn, 790 F.2d 1164, 1168-69 (5th Cir.1986), cert. denied, 481 U.S. 1042 (1987); United States v. Schaflander, 743 F.2d 714, 719 (9th Cir.1984), cert. denied, 470 U.S. 1058 (1985).
 
 
 21
 Tabitha Johnson, petitioner's sister, testified at the state evidentiary hearing that she remembered petitioner coming home the night of August 14, 1980, but could not remember when he arrived or left, and admitted she remembered hardly anything about the night. Petitioner did not prove that Tabitha Johnson could have established an alibi; thus, the failure to call her as a witness at trial did not constitute ineffective assistance of counsel.
 
 
 22
 Petitioner lists numerous other potential witnesses whom Laphen did not interview or call to testify at trial.[6] Under most circumstances,[7] to establish ineffective assistance of counsel one must "affirmatively prove prejudice." Strickland, 466 U.S. at 693. "To affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial." Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir.1990). When an ineffective assistance claim centers on a failure to investigate, "[t]he focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." United States ex rel. Cross v. DeRobertis, 811 F.2d 1008, 1016 (7th Cir.1987). Ordinarily, such information would be presented through the testimony of the potential witnesses. Id. If the witnesses do not testify, the petitioner must explain why and " 'demonstrate, with some precision, the content of the testimony they would have given at trial.' " Lawrence, 900 F.2d at 130 (quoting Cross, 811 F.2d at 1016).
 
 
 23
 Petitioner failed to present the testimony of these potential witnesses at the state evidentiary hearing, failed to explain why they did not testify at that hearing, and failed to make a showing at that hearing what their testimony would have been. Petitioner did not carry his burden of affirmatively proving that Laphen's failure to call these witnesses prejudiced the defense.
 
 
 24
 Petitioner also claims Laphen was ineffective for failing to present evidence at trial that D.M.B. had a vendetta against petitioner. Specifically, this evidence would have established that petitioner and D.M.B.'s son were friends. They committed a burglary with a third person. D.M.B.'s son was caught trying to hock the stolen goods. He would not implicate petitioner in the crime, and received a longer sentence as a result. D.M.B. was angry at petitioner because she knew he was involved, and threatened to get even. Petitioner made an offer of proof at the state hearing that D.M.B. followed through on a threat to the other participant in the burglary by lending him her car and then turning him in for stealing it.
 
 
 25
 Petitioner testified at the evidentiary hearing that he did not bring out the evidence because Laphen advised him not to and did not ask questions to elicit the evidence. Even if petitioner acquiesced in Laphen's advice not to bring out the evidence, a matter not made clear by the evidence, his consent is only as good as the advice which informed that consent. See Loe v. United States, 545 F.Supp. 673, 683 (E.D. Va.1982). The critical question is whether that advice was within the range of competence required of a criminal defense attorney. Id.
 
 
 26
 The district court concluded that Laphen's failure to present this evidence was within the wide range of professional competence. In evaluating this conclusion we must keep in mind that petitioner had the burden of overcoming the presumption that Laphen's conduct might be considered sound trial strategy. "We need not determine the actual explanation for trial counsel's failure to [take certain action], so long as his failure to do so falls within the range of reasonable representation." Morris v. California, 966 F.2d 448, 456 (9th Cir.1991), cert. denied, 113 S.Ct. 96 (1992).
 
 
 27
 Laphen reasonably could have wanted to keep the jury from learning that petitioner engaged in criminal behavior in addition to the one prior conviction petitioner admitted at trial.[8] Further, Laphen reasonably could have concluded the fact that D.M.B. allegedly made the threat two or three years before August14, 1980, diminished the likelihood that the rape charge was connected to the threat. We conclude that a tactical decision by Laphen to keep out the evidence for these reasons would have been reasonable. Petitioner offered no evidence that other reasons motivated Laphen's actions.
 
 
 28
 Petitioner next contends Laphen was ineffective for not obtaining a transcript of the preliminary hearing. Laphen's notes showed few discrepancies of any significance between the preliminary hearing and trial testimony. Petitioner has not established that Laphen's failure to order a transcript was unreasonable, or that it prejudiced the defense.
 
 
 29
 Finally, petitioner argues that Laphen was ineffective for failing to strike prospective juror Sarah Stevenson from the panel after learning that her cousin had been raped. He claims that at the time of this juror's sitting Laphen had not used any peremptory challenges. The record is unclear how many challenges Laphen had used when Stevenson was seated. Assuming Laphen had peremptory challenges available, petitioner still had the burden of proving that Laphen's failure to strike Stevenson was not the result of trial strategy. He offered no evidence to this effect.
 
 
 30
 Nor has petitioner provided evidence that Stevenson was actually biased.[9] Rather, he appears to contend that her bias should be implied. Whether juror bias may be implied from the circumstances is a question of law. Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir.1991). The implied bias doctrine is to be appliedonlyin
 
 
 31
 'extreme' situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations ... [such as] where the prospective juror has been the victim of a crime or has experienced a situation similar to the one at issue in the trial.
 
 
 32
 Hunley v. Godinez, 975 F.2d 316, 319 (7th Cir.1992). We conclude the fact that a juror had a cousin who had been raped is not the type of extreme situation from which bias can be implied.
 
 
 33
 Petitioner's request for appointment of counsel is denied. The court on its own motion waives Fed.R.App.P. 28(g) limiting the appellant's opening brief to fifty pages.
 
 
 34
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Respondent conceded that petitioner exhausted his state remedies. R. Vol. I doc. 5 at 2
 
 
 [3]
 Certain state court findings are presumed correct unless one of the factors listed in 28 U.S.C. 2254(d) applies
 
 
 [4]
 The district court did not indicate whether it also adopted the state court's findings
 
 
 [5]
 Petitioner concedes in his brief that Barolin was not the foundation of his alibi. Aplt's Br. at 59
 
 
 [6]
 They are Donna Teague, Valerie Johnson, Joe Johnson, Isaac Johnson, Jimmy Johnson, Scott Yocum, and Earl Bailey, Jr
 
 
 [7]
 This case does not present circumstances under which prejudice could be presumed. Compare Strickland, 466 U.S. at 692-93
 
 
 [8]
 The record indicates that petitioner was arrested on October11, 1975, for burglary. He was convicted on January 19, 1976, of an amended charge of knowingly receiving stolen property. Petitioner testified that he met D.M.B.'s son the spring of 1978. Thus, his 1976 conviction could not have been for criminal conduct committed with D.M.B.'s son
 
 
 [9]
 The jury selection was not transcribed, and Stevenson was not called as a witness at the state evidentiary hearing